UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

VICKY L. CAGLE, )
    Plaintiff, )
 )
v. ) Case No. 1:11-cv-217
 ) (Collier/Carter)
MICHAEL J. ASTRUE )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 14) and defendant's Motion for Summary Judgment (Doc. 16).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was age 44 at her alleged disability onset and age 47 when the ALJ issued his decision (Tr. 85). Plaintiff has an associate's degree in computer technology and has worked in the past as a customer service representative and cardiac technician (Tr. 21, 29, 104-105, 109, 121-128, 246).

Claim for Benefits

Plaintiff applied for a period of disability and disability insurance benefits, alleging

disability beginning June 1, 2007 (Tr. 83-90). The Agency denied her application initially and on reconsideration (Tr. 40-41, 45-51). After a hearing (Tr. 26-38), an administrative law judge (ALJ) found her not disabled in an April 16, 2010, decision (Tr. 10-25). Plaintiff timely pursued her administrative remedies, and this case is now ripe for review. *See* 42 U.S.C. § 405(g).

<u>Standard of Review - Findings of the ALJ</u>

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work

2

experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 1, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq*.).

3. The claimant has the following severe impairments: irritable bowel syndrome, history of adrenal cancer, and history of multiple abdominal surgeries (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual

3

functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).

6. The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2007, through the date of this decision (20 C.F.R. 404.1520(f)).

(Tr.15-21).

## Issues Raised

1. Whether the ALJ committed clear and reversible error when it disregarded Vocational Expert testimony that undermined its conclusion.

2. Whether the ALJ violated the Substantial Evidence standard by overlooking significant, nonexertional mental limitations.

## Relevant Facts

Medical Evidence

Plaintiff's alleged disability began in June 2007 (Tr. 85). In March 2008, doctors discovered a mass in Plaintiff's left adrenal gland (Tr. 178-216, 230-236, 285-290, 295-300). On April 28, 2008, they removed the gland, and Plaintiff returned home from the hospital on May 1, 2008 (Tr. 178-179). Follow up examinations of the surgical site, including x-rays and CT scans and a cardiac stress test, through May 2009 were normal; although Plaintiff occasionally complained of mild to diffuse abdominal tenderness and diarrhea, her surgical area was well-healed, and her abdomen remained soft with no masses (Tr. 196, 212, 217, 218, 226, 230, 234, 265-284, 305, 308-315, 322-326). However, on October 17, 2008 she was having ongoing pain, anxiety and depression (Tr. 279, 280) and on October 27, 2008 she experienced increased pain (Tr. 277).

July 2008 imaging and biopsies revealed moderate gastritis and a benign tumor and no

4

bacterial infection or colitis. The impression of the endoscopist was mild gastritis, otherwise normal endoscopic examination (Tr. 218, 220-225). Despite Plaintiff's complaints of diarrhea, nausea, and left lower quadrant pain, gastroenterological exams in July 2008 through January 2009 were unremarkable. A physician's' assistant prescribed Plaintiff antacids and anti-diarrheal medication. Assessments included constipation, diarrhea, mixed IBS and GERD (Tr. 217-229, 305-306). In September 2008, Plaintiff reported ongoing abdominal pain but she managed her diarrhea with frequent small meals (Tr. 281).

On September 23, 2008, a non-examining state agency physician, Dr. Warner, reviewed Plaintiff's medical records and opined Plaintiff could do medium work[1] (Tr. 237-244). In December 2008, Plaintiff complained of "dizzy spells and nausea," and variable episodes of gastritis, but had no acute abdominal findings (Tr. 275). In January 2009, state agency physician Dr. Misra reviewed Plaintiff's medical records. He noted off and on diarrhea secondary to IBS, with no significant changes in Plaintiff's physical impairments. He agreed with Dr. Warner's assessment (Tr. 303).

In February 2009, Plaintiff reported medication had completely relieved her dizziness and that she had been discharged from pain management. However she appeared to have pain in her left lower quadrant (Tr. 314). In March 2009, Plaintiff's primary care doctor noted that she had appeared comfortable in the waiting room, but displayed pain behavior (rocking) in the exam room (Tr. 312). In April 2009, Plaintiff was treated for a tick bite. She reported no gastrointestinal symptoms at that time (Tr. 310).

In March 2010, consultative examiner Dr. Johnson noted Plaintiff reported incontinence

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

for four years and irritable bowel syndrome that alternates between constipation and diarrhea, but improved symptoms with medication. She wore adult diapers when she went out in public (Tr. 344). After a thorough exam, Dr. Johnson noted normal findings except for left lower quadrant pain and slightly decreased right shoulder strength (Tr. 346). Dr. Johnson opined that Plaintiff could perform a reduced range of light work[2] (Tr. 346-352). At checkups from March 2008 to January 2009, Plaintiff was alert, oriented (Tr. 196, 210, 273-290, 308-315), and occasionally, even smiling. However, she complained of ongoing dizziness and abdominal pain (Tr. 273, 308).

In a November 2008 consultative psychological exam, Plaintiff answered questions appropriately with normal pace, flow of ideas, and tone. She gave relevant, coherent, and goal-directed responses, made appropriate eye contact. She was fully alert and oriented with stable insight, reasoning, and judgment, and intact concentration, recall, and recent and remote memory. Her effort was somewhat flat and mood mildly depressed. Plaintiff described adequate interest in activities and social contact, denied abnormal thought content, and demonstrated average cognition and a good fund of information (Tr. 247). The examiner opined Plaintiff had only mild to moderate major depressive disorder, stable social patterns, and no restriction in her ability to understand, recall, concentrate, persist, or adapt in a work setting. Problem solving skills and adaptation did not appear restricted (Tr. 248).

On November 21, 2008, State agency psychologist Dr. Phay reviewed the evidence and opined Plaintiff's mental impairments were not severe and caused no more than mild limitations

---

[2] Light work involves lifting up to 20 pounds occasionally and 10 pounds frequently and walking/standing a good deal or sitting most of the time while pushing and pulling arm or leg controls. See 20 C.F.R. § 404.1567(b).

6

(Tr. 251-264). In December 2008, state agency psychologist Dr. Livingston reviewed the evidence and agreed with Dr. Phay's conclusions. Dr. Livingston noted Plaintiff did not allege a worsening in her mental condition and had sought no additional treatment (Tr. 272). In November and December 2009, Plaintiff received medication for diagnosed depression (Tr. 329-343). On November 20, 2009, progress notes from Volunteer Behavioral Health Care reflect a diagnosis of Major Depressive Disorder, severe, without Psychotic features (Tr. 343). By December 21, 2009 Plaintiff was making progress toward goals which were to stabilize her mood and decrease her anxiety (Tr. 329, 330). Plaintiff reported smoking marijuana (Tr. 341). Psychiatrist Dr. Brewer assessed Plaintiff's overall risk of suicide as low, and he noted her normal speech and thought content, full orientation, appropriate affect and behavior, organized thought flow, and fair memory, concentration, insight, judgment, and impulse control (Tr. 342).

<u>Statements of Plaintiff:</u>

Plaintiff reported she regularly sat in a recliner for extended periods, prepared meals with her daughter, cleaned house, did laundry, cross-stitched, helped her daughter get ready for school, and fed and watered a cat and a dog (Tr. 32, 129-135). Plaintiff also indicated she watched television, drove alone, saw to her own personal care and medication needs without reminders, managed money, talked on the phone, visited with her mother, kept doctor appointments without reminders, finished what she started, and had no problems paying attention, following instructions, adjusting to changes in routine, or getting along with others (Tr. 32, 34, 129-137). At a checkup in June 2008, Plaintiff reported she was giving full time care to her 3-month-old grandson, who had multiple medical problems (Tr. 283). At a consultative exam in November 2008, Plaintiff reported she visited her son, daughter-in-law, and grandson

several times a week and enjoyed playing video games, cards, eating meals, and playing with her 8-month-old grandson. However, she denied involvement in organizations and household chores. (Tr. 247). Nonetheless, Plaintiff alleged disability due to adrenal cancer, multiple surgeries, chronic pain, irritable bowel symptoms, bowel incontinence, and fatigue (Tr. 103, 115).

Findings of the ALJ

The ALJ followed the five-step sequential evaluation process and determined that, despite Plaintiff's allegations, she was not disabled (Tr. 10-25). See 20 C.F.R. § 404.1520. At steps two and three, the ALJ found that Plaintiff's irritable bowel syndrome, history of adrenal cancer, and history of abdominal surgeries were severe impairments, but her impairments did not, either individually or in combination, meet or equal any of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 15-17). At step four, the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work,[3] which allowed her to return to her past relevant work, and was, therefore, not disabled (Tr. 17-21).

Analysis:

1. Did the ALJ disregard Vocational Expert testimony that undermined its conclusion?

Plaintiff first argues the ALJ did not explain why the RFC does not include the Plaintiff's IBS and incontinence, nor mention or discredit VE testimony that such impairment would likely preclude any type of work. He argues the decision is not supported by substantial evidence and violated procedural rules designed to protect the claimant. Plaintiff points to the ALJ's decision which found Plaintiff capable of performing the full range of sedentary work (Tr. 17). Plaintiff acknowledges the Decision mentioned that "[t]he claimant testified that she must use the

---

[3] Sedentary work involves lifting up to 10 pounds occasionally and a certain amount of walking/standing. See 20 C.F.R. § 404.1567(a).

8

bathroom 15 to 20 times per day and that she experiences diarrhea three or more times each day, sometimes with incontinence" (Tr. 18).  However, Plaintiff argues the ALJ never even took the time to discuss the severe bouts of diarrhea, three (3) times per week, described at the hearing, and never mentioned that the VE stated bathroom breaks every thirty (30) minutes would seemingly preclude all work activity (Tr. 37).  Plaintiff further argues the decision relied on a faulty perception of the medical evidence, and was factually inaccurate and did not explain why the RFC does not include the Plaintiff's IBS and incontinence, nor mention or discredit VE testimony about these impairments. For all those reasons, Plaintiff argues the ALJ did not properly assess and examine the entire record as a whole (Doc. 15, Plaintiff's Brief pp. 5-8).

On the other hand, the Commissioner contends the ALJ set out his RFC finding and specifically stated that, in making this finding, he considered all of Plaintiff's symptoms, the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence, as well as the opinion evidence of record (Tr. 17).  Plaintiff alleges the ALJ "relied on a faulty perception of the medical evidence" regarding Plaintiff's reported bowel incontinence and frequent bathroom use and did not account for resulting limitations in his RFC finding.  The Commissioner points to substantial evidence in the medical record which supports the ALJ's ultimate finding that, though Plaintiff experienced some impairments, including irritable bowel syndrome, which limited her ability to do work activity to some extent, she was still capable of sedentary work and was, therefore, not disabled (Tr. 15-21).  The ALJ evaluated the record as a whole, including the medical evidence and Plaintiff's statements, to determine the credibility of her subjective complaints and the effect of her impairments on her RFC (Tr. 15-

21).

As the Commissioner notes, Plaintiff's gastrointestinal impairment is relevant to the disability analysis only to the extent that it affected her ability to work. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition."); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

When a Plaintiff attempts to establish disability based on subjective complaints, she must provide objective medical evidence of an underlying medical condition that either confirms the severity of the alleged symptoms or indicates the condition reasonably could be expected to cause symptoms as severe as alleged. See 20 C.F.R. § 404.1529; *see also Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to what extent, if any, the alleged symptoms limit the claimant's work capacity. *See* 20 C.F.R. § 404.1529(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531.

In this case, Plaintiff complained of bowel incontinence and frequent bathroom use, but she failed to prove she was as limited as she claimed. *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004) (finding an ALJ may properly discount a claimant's credibility

10

based on contradictions among medical reports, the claimant's testimony, and other evidence). As the ALJ explained, discrepancies between Plaintiff's assertions and other recorded information constitute substantial evidence to support his finding as to the credibility of Plaintiff's statements and as to Plaintiff's RFC (Tr. 17-21).

In particular, no mention of bowel incontinence or frequent bathroom use to the degree alleged at the hearing (every 30 minutes, Tr. 33) appears in the treatment notes. Plaintiff did not complain of gastrointestinal problems until March 2008, nine months after her alleged disability began. At that time, she described cycles of diarrhea alternating with constipation and stool incontinence more than three times a week (Tr. 233, 287, 289, 300). In April 2008, she reported frequent diarrhea (Tr. 180), but later in the month, she stated medication controlled her diarrhea. Her IBS was assessed as stable (Tr. 230). She specifically denied diarrhea associated with her reported flank pain (Tr. 195). In May 2008, Plaintiff indicated her bowel function was normal with use of stool softener (Tr. 268). In July, August, and September 2008, she described diarrhea and occasional constipation (Tr. 217-218, 226) but reported she managed her condition with frequent small meals (Tr. 281). Treatment records do not mention bowel problems again until January 2009, when Plaintiff described a stable pattern of four days of constipation, then one of diarrhea (Tr. 273, 305). In March 2010, Plaintiff reported she alternated between constipation and diarrhea and was incontinent up to two times per week, but her medication relieved her symptoms, and she wore adult diapers when she went out (Tr. 344). As the ALJ explained, the significant gaps in reported symptoms, along with Plaintiff's admissions that the use of such modalities as medication, frequent small meals, and adult diapers allowed her to function despite her symptoms, greatly undermined Plaintiff's allegations of disabling bowel

symptoms (Tr. 17-20).

Further, Plaintiff's alleged functional limitations conflict with recorded medical evidence. Objective exams, including x-rays, CT scans, colonoscopies, and biopsies, were largely unremarkable, noting Plaintiff's abdomen was soft and free of masses and revealing no bacterial infection or colitis and only some gastritis and a benign tumor (Tr. 196, 210, 212, 217-218, 220-226, 230, 234, 265-284, 305, 308-315, 322-326). No physician indicated Plaintiff had limitations that would preclude work (Tr. 174-353). Indeed, Drs. Warner and Misra opined Plaintiff could do medium work (Tr. 237-244, 303), and Dr. Johnson opined that Plaintiff could perform a reduced range of light work (Tr. 346-352).

Finally, Plaintiff reported various activities that are inconsistent with totally disabling physical symptoms. Plaintiff reported she regularly prepared meals, cleaned house, did laundry, cross-stitched, helped her daughter get ready for school, fed and watered a cat and a dog, drove alone, visited with her mother, and finished what she started (Tr. 32, 34, 129-137). In June 2008, Plaintiff reported she was caring full time for a 3-month-old with multiple medical problems (Tr. 283). Plaintiff clearly enjoyed a range of activities far beyond "minimal daily functions." *See Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 246-249 (6th Cir. 2007).

I conclude Plaintiff failed to meet her burden of proving her condition caused disabling limitations. Substantial evidence supports the ALJ's finding that Plaintiff could perform sedentary work. The evidence does not support Plaintiff's allegations of additional functional limitations. The ALJ properly considered the relevant evidence and properly performed his fact-finding duty to resolve any conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Given the inconsistencies between the medical evidence, Plaintiff's activities, and

her subjective complaints, the ALJ properly found her subjective complaints less than fully credible. The ALJ did not adopt wholesale Plaintiff's assertion that her symptoms so limited her as to preclude all work activity, but he clearly considered the possible effects of Plaintiff's symptoms and accounted for them in his findings when he identified Plaintiff's severe impairments and included limitations from them in his finding as to RFC (Tr. 15-21). I conclude substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

    2. <u>Did the ALJ overlook significant, non-exertional mental limitations?</u>

Plaintiff next argues the ALJ did not consider the Plaintiff's mental limitations when he found Plaintiff could participate in the full range of sedentary work. Plaintiff argues that in making its finding, the ALJ relied on the opinion of consultative examiner David Caye, M.S., given in November of 2008 (Tr. 19). According to the Decision, "Mr. Caye found essentially no work-related restrictions from the claimant's mild depression and anxiety…" (Tr. 19). Plaintiff argues the ALJ's reliance on Mr. Caye's opinions disregards Plaintiff's mental health treatment records from Mountain Valley Health, which show a diagnosis of Major Depressive Disorder and a GAF score ranging from forty-nine to fifty-five (Tr. 33). Additional records also describe the claimant's "episode," and treatment at a crisis unit for suicidal thoughts, where her Major Depressive Disorder was described as both severe and recurrent (Tr. 332-343). Plaintiff points to a mental health report from December 2009 which revealed that the Plaintiff has frequent problems with performing daily routine activities, and is unable to perform up to acceptable standards without frequent assistance. She also has limited integration in the community, little or no use of natural supports and/or marginal capacity to take part in a variety of social activities or

13

manage self in relationship to others, and/or demonstrates aggressive episodes with limited ability to self-manage behavior. Plaintiff argues she cannot focus, and has regular or frequent difficulty with concentration . She can complete simple tasks but needs prompting and help; and she will display regular or frequent difficulty in accepting and adjusting to change. (Tr. 333-335). Plaintiff argues the ALJ did not consider material mental evidence when determining the Plaintiff's RFC, and in doing so violated Soc. Sec. Rul. 96-8p (Doc. 15, Plaintiff's Brief pp. 8-10).

On the other hand, the Commissioner argues: (1) the ALJ properly considered Plaintiff's impairments in combination, evaluated her subjective complaints, and accounted for all the resulting limitations before concluding that Plaintiff could return to her past relevant work, and (2) that the evidence regarding Plaintiff's mental condition indicates it did not significantly limit her ability to perform work-related activity for at least twelve continuous months. *See* 20 C.F.R. §§ 404.1521(a) (stating an "impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"), 404.1505(a), 404.1509; 42 U.S.C. § 423(d)(1)(A); *Murphy v. Sec'y of Health and Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986) (explaining a severe impairment must last for at least twelve continuous months).

In support of his position, the Commissioner notes that at checkups from March 2008 to January 2009, Plaintiff was alert, oriented (Tr. 196, 210, 273-290, 308-315), and occasionally, even smiling (Tr. 273, 308). In November 2008, Plaintiff answered questions appropriately with normal pace, flow of ideas, and tone, gave relevant, coherent, and goal-directed responses, made appropriate eye contact, and was fully alert and oriented with stable insight, reasoning, and

judgment, and intact concentration, recall, and recent and remote memory (Tr. 247). Plaintiff described adequate interest in activities and social contact, denied abnormal thought content, and demonstrated average cognition and a good fund of information (Tr. 247).

A consultative examiner opined Plaintiff had only mild to moderate mental symptoms, stable social patterns, and no restriction in her ability to understand, recall, concentrate, persist, solve problems, or adapt in a work setting (Tr. 248).

Both state agency psychologists opined Plaintiff's mental impairments were not severe and caused no more than mild limitations (Tr. 251-264, 272). Plaintiff did not seek mental health treatment until November and December 2009, when she received medication for diagnosed depression (Tr. 329-344). At that time, a psychiatrist assessed Plaintiff's overall risk of suicide as low, and he noted her normal speech and thought content, full orientation, appropriate affect and behavior, organized thought flow, and fair memory, concentration, insight, judgment, and impulse control (Tr. 342). As the ALJ noted (Tr. 20), while the records from November and December 2009 may suggest a possible increase in mental limitations, they do not indicate, given the remaining evidence related to Plaintiff's daily activities, that Plaintiff experienced those limitations on a continuous basis or that they would last for a continuous twelve months if Plaintiff followed treatment recommendations (Tr. 329-344).

Plaintiff's reported activities confirm that she did not experience significant mental limitations prior to November 2009. She regularly visited with family, prepared meals with others, cleaned house, did laundry, cross-stitched, helped her daughter off to school, looked after pets, watched television, drove alone, managed money, and talked on the phone (Tr. 32, 34, 129-137). She also kept doctor appointments and saw to her personal care and medication needs

without reminders, finished what she started, and had no problems paying attention, following instructions, adjusting to changes in routine, or getting along with others (Tr. 129-137). In June 2008, Plaintiff reported providing full time care to a 3-month-old child with multiple medical problems (Tr. 283), and in November 2008, she reported she enjoyed playing video games, cards, eating meals, and playing with her 8-month-old grandson (Tr. 247).

     Given Plaintiff's reported activities, the opinions of the Consultative Examiner and the two State Agency Psychologists, I conclude Plaintiff failed to show her mental impairments caused disabling limitations or caused significant work-related limitations for a continuous twelve months. Given the record as a whole, substantial evidence supports the ALJ's findings as it relates to her alleged mental impairment.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 16) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 14) be DENIED and the case be DISMISSED.[4]

                                            S/*William B. Mitchell Carter*
                                            UNITED STATES MAGISTRATE JUDGE

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).